## SCHEDULE A

### Floor Plan



<u>SCHEDULE B</u>

Work

Lease

Between


Westchester Building Company, LLC,

As Landlord

and


AMERIQUEST MORTGAGE COMPANY,

As Tenant


Relating to the entire ground, 1st and 2nd floors in North  Building
333 Westchester Avenue, White Plains, New York

1.    Landlord, at Landlord's expense, and without deduction from Landlord's Aggregate Contribution, except as otherwise specified in this Schedule B and the Lease, will perform and install the following base building work and installations (Base Building Work"), all of which work shall be performed in compliance with all laws (to the extent applicable) and shall be of material, manufacture, design, capacity, finish and color of the building standard adopted by Landlord for the Building, except as otherwise set forth in said plans and specifications:

<u>Base Building Documentation</u>

Tenant acknowledges that all drawings have been sent to Tenant's architect.

<u>To be performed prior to Commencement Date:</u>

<u>Masonry</u>

1.    Close up shaft areas.

2.    Repair damage caused by asbestos removal

3.        All concrete shafts walls shall go to deck above

<u>Common Areas Columns, Perimeter Conditions and Building Core.</u>

1.        All existing mechanical and existing electrical closets to be cleaned and painted in building standard manner.

2.        The inside face perimeter walls, sills and soffits shall be framed, drywalled, insulated, spackled, finished taped and sanded from slab to finish ceiling ready for paint with Level 4 finish.

3.        Furnish and install convector covers where necessary.

4.        Elevator and core walls shall be framed, drywalled, spackled, finished taped and sanded from slab to underside of ceiling slab ready for paint with Level 4 finish.

<u>Toilet Rooms</u>

1.        Renovate in building standard colors, materials, finishes and design, restrooms, including new fixtures, new toilet partitions, new countertops and new tiles. Within 7 days after Landlord gives building standard colors to Tenant, Tenant to select color. If Tenant fails to select color within said 7 days, then Landlord may select color.

2.        Should Tenant elect to install ADA bathrooms on the ground and 1st floors within Tenant's premises, Landlord will provide a credit of $ 36,000.00 toward the installation of male and female bathrooms on the ground and 1st floors, after presentation of contractors bills paid by Tenant. All finishes to be selected by Tenant to meet Landlord's reasonable approval. If Tenant does not do the work then Tenant shall receive no credit. If in the future, such work is required by Governmental Requirements or complaints by third parties (ADA) then Tenant, at its sole expense, will do the work. Tenant will indemnify and hold harmless Landlord for all costs, damages and expenses in connection with Tenant's failure to do the ADA bathrooms.

3.        Install ADA bathrooms at existing pantry locations on the 2nd floor between existing male/female bathrooms within Tenant's premises. All colors, materials, design and finishes to be building standard to meet Tenant's reasonable approval.

HVAC Systems

1.  Main supply trunks and return trunks are currently existing. All distribution shall be by Tenant, at its expense, including but not limited to, branches, thermostats, controls and similar devices and equipment.

2.  All existing induction unit water control valves to be refurbished and provided in good working condition.

3.  Replace any damaged existing insulation on ground floor main duct off main takeoff.

4.  Install combination fire and smoke dampers at supply and return duct shaft penetrations, where ducts penetrate floor or rated core walls.

Electrical Systems

1.  Landlord to deliver 6 watts per RSF, excluding HVAC, on a connected load basis to panels at the locations in the existing electric closets.

2.  Landlord to install a submeters within the Tenant premises to measure Tenant's electric consumption, at Landlord's cost.

3.  Remove existing branch circuit conductors.

4.  Conduit penetrations through fire-rated partitions shall be "fire caulked". Fire-caulk existing rated penetrations. Panels where used for pull boxes shall be removed.

5.  Multiple 277/480V lighting panels have manufacture-labeled for use in 120/208V systems. Replace existing 277/480V panels with panels rated for the higher voltage.

6.  Landlord will provide required fire safety points.

7.  Ventilate rooms containing transformers to meet local and national codes.

Security Access System

Landlord has installed a card access reader system at North and East building lobby entrances. Currently Landlord's charge to tenants is $15.00 per card.

<u>Communication Systems & Telecommunications Access</u>

1.        All existing riser and walker duct capacity will be delivered clean and empty for Tenant use.

2.        Tenant will be responsible for maintenance and management of these existing risers and duct facilities, inside Tenant's premises.

3.        All existing communications closets to be prepared, cleaned, patched and painted.

<u>Elevator and Escalators</u>

All elevators and escalators are in good working order and will be maintained by Landlord.

<u>Demolition</u>

Landlord to complete demolition throughout premises and deliver in broom clean condition.

## <u>To be performed following Commencement Date</u>

<u>HVAC Systems</u>

Inductor cabinet panels that are damaged to be replaced.

<u>Fire and Life Safety</u>

1.        All common areas to meet all local, state and federal codes for fire and life safety. Landlord to provide access to fire and life safety systems for "tie-ins" by Tenant for devices within its premises.

2.        Tenant shall hire, at its expense, the building Fire and Life Safety contractor for its work to be performed on the fire and life safety systems.

<u>Miscellaneous</u>

1.        Tenant's contractor and subcontractors shall receive free parking in a designated area during construction of the tenant's initial improvements.

2.  Landlord shall complete all existing door reconfigurations at the existing stairs in the North Building, as per plans to be prepared by Tenant's architect. Construction costs are Landlord's responsibility.

2.  Landlord to remove or contain all existing asbestos throughout Tenant Premises. Certification or a report shall be delivered to Tenant after completion.

3.  No Landlord fee or charges for initial work.

4.  No Landlord fee or charges for expansion work unless absolutely necessary and at Landlord's actual costs.

## To be performed following Tenant's occupancy of Demised Premises

### Common Areas Columns, Perimeter Conditions and Building Core.

Within thirty days after Tenant's occupancy of the entire demised premises, all common areas including exit stairwells to be cleaned, repaired and painted to building standard to meet Tenant's reasonable approval.

### Perimeter Window Coverings

Within sixty days after Tenant's occupancy of the entire demised premises, Landlord to furnish building standard window blinds.

2.  Tenant acknowledges that Landlord may be delayed in substantially completing the Base Building Work to be performed by Landlord under Article 1 of this Schedule B, as a result of:

(i)  Tenant's request for materials, finishes or installations other than Landlord's building standard; or

(ii)  Delays in the completion of work performed on behalf of Tenant by a person, firm or corporation employed by Tenant; or

(iii) Any unreasonable interference by Tenant;

therefore the Commencement Date of the Lease shall be accelerated by the number of days that substantial completion has been delayed by reason of the foregoing.

3.    Following Landlord's installation of any ceiling materials, if by reason of any work performed by or on behalf of Tenant any of the ceiling materials are damaged and/or removed by Tenant's contractor, such damaged ceiling materials shall be replaced by Landlord at the expense of Tenant.

4.    Landlord will permit Tenant and its agents to perform through its own contractors, to be first approved by Landlord, Tenant's initial work and installations at the same time that Landlord's contractors are working in the space. The foregoing license to perform such work is conditioned upon Tenant's workmen and mechanics working in harmony and not interfering with the labor employed by Landlord, Landlord's mechanics or contractors or by any other tenants or their contractors. If at any time such entry shall cause disharmony or interference therewith, this license may be withdrawn by Landlord upon 24 hours notice to Tenant.

Workers' compensation and public liability insurance and property damage insurance, all in amounts and with companies and on forms reasonably satisfactory to Landlord, shall be provided and at all    times maintained by Tenant's contractors engaged in the performance of the work, and before proceeding with the work, certificates of such insurance shall be furnished to Landlord.

Such entry shall be deemed to be under all of the terms, covenants, and conditions of the Lease except as to the covenant to pay minimum rent or additional rent. Landlord shall not be liable in any way for any injury, loss or damage which may occur to any of Tenant's decorations or installations so made, the same being solely at Tenant's risk, unless due to the negligence or willful misconduct of Landlord, its agents, contractors or employees.

                **WESTCHESTER BUILDING COMPANY, LLC**
                By:    West Building Corp.
                     its managing member

                By:    _____
                     Charles Steven Cohen, President

Accepted by:

**AMERIQUEST MORTGAGE COMPANY**

By:    _____
        Name:
        Title:

## SCHEDULE B-1

Base Building Documentation for Expansion Premises (Year 4 - Lease Expiration)
that are in Raw Condition

Tenant acknowledges that all drawings have been sent to Tenant's architect.

**To be performed prior to Commencement Date:**

Masonry

1.      Close up shaft areas.

2.      Repair damage caused by asbestos removal

3.      All concrete shafts walls shall go to deck above

Common Areas Columns, Perimeter Conditions and Building Core.

Furnish and install convector covers where necessary.

Toilet Rooms

1.      Landlord to install the following building standard work in the existing
bathrooms: new countertops, new faucets, new lighting fixtures and paint

2.      Landlord to deliver all fixtures in good working order.

HVAC Systems

1.      Main supply trunks and return trunks are currently existing. All distribution
shall be by Tenant, at its expense, including but not limited to, branches,
thermostats, controls and similar devices and equipment.

2.      All existing induction unit water control valves to be refurbished and
provided in good working condition.

3.      Clean all existing AHU's and supply/return mains.

4.      Install combustion fire and smoke dampers at supply and return duct shaft
penetrations, where ducts penetrate floor or related core walls.

Electrical Systems

1.       Landlord to deliver 6 watts per RSF, excluding HVAC, on a connected load basis to panels at the locations in the existing electric closets.

2.       Landlord, at its option, to install submeters within the Tenant premises to measure Tenant's electric consumption.

3.       Remove existing branch circuit conductors.

4.       Conduit penetrations through fire-rated partitions shall be "fire caulked". Fire-caulk existing rated penetrations.  Panels where used for pull boxes shall be removed.

5.       Multiple 277/480V lighting panels have manufacture-labeled for use in 120/208V systems.  Replace existing 277/480V panels with panels rated for the higher voltage.

6.       Landlord will provide required fire safety points.

7.       Ventilate rooms containing transformers to meet local and national codes.

Security Access System

Landlord has installed a card access reader system at North and East building lobby entrances The Landlord's charge per card will be the then prevailing rate.

Communication Systems & Telecommunications Access

1.       All existing riser and walker ducts will be delivered clean and empty for Tenant use.

2.       Tenant will be responsible for maintenance and management of these existing risers and duct facilities, inside Tenant's premises.

Elevator and Escalators

All elevators and escalators are in good working order and will be maintained by Landlord.

Demolition

1.       If premises are unimproved, Landlord to complete demolition throughout the premises and deliver in broom

clean condition.

## To be performed following Commencement Date

### HVAC Systems

Inductor cabinet panels that are damaged to be replaced.

### Fire and Life Safety

1. All common areas to meet all local, state and federal codes for fire and life safety. Landlord to provide access to fire and life safety systems for "tie-in" by Tenant for devices within its premises.

2. Tenant shall hire, at its expense, the building Fire and Life Safety contractor for its work to be performed on the fire and life safety systems.

### Perimeter Window Coverings

Within sixty days after Tenant's occupancy of the entire demised premises, Landlord to furnish building standard window blinds.

91

## SCHEDULE C

### Description of Land

ALL that piece or parcel of land, situate, in the City of White Plains, County of Westchester and State of New York, bounded and described, as follows:

BEGINNING at a point on the southerly side of Westchester Avenue intersected by the division line between the Northeast corner, of premises herein conveyed and the westerly line of lands now or formerly of Patrick H. Donohue III and Kim E. Donahue as described in deed in Liber 7811 cp 114;

BEGINNING THENCE along said division line,

South 19° 37' 50" West 165.76 feet;

THENCE RUNNING along said lands now or formerly of Donahue and the lands now or formerly of Kaplan (Liber 6994 cp 39);

South 57° 17' 10" East 252.49 feet to the lands now or formerly of Mary Lou MacDonald and Victor A. Pagano (Liber 11154 cp 171);

RUNNING THENCE along said last mentioned land, the following four (4) courses and distances:

1. South 43° 47' 00" West  89.19 feet;
2. South 33° 50' 00" West  46.57 feet;
3. South 68° 04' 00" West  53.53 feet;
4. South 25° 29' 00" West  26.17 feet to the westerly line of land as

shown on Subdivision Map, Section No.2, Old Oak Ridge", filed in the County Clerk's Office, Division of Land Records, formerly Register's Office of Westchester County, New York; as Map No. 3391;

RUNNING THENCE along said line of said land, the following twenty-one (21) courses and distances;

1. South 18° 32' 30" East   99.50 feet;
2. South 11° 14' 00" West   26.23 feet;
3. South 06° 10' 00" West   74.84 feet;
4. South 76° 06' 00" West   53.77 feet;
5. South 25° 59' 30" West   68.45 feet;
6. South 19° 30' 00" West  150.27 feet;

| | | | | | |
|---|---|---|---|---|---|
| 7. | South | 11° | 35' | 30" East | 41.11 feet; |
| 8. | North | 84° | 30' | 00" West | 83.62 feet; |
| 9. | South | 22° | 06' | 00" West | 73.94 feet; |
| 10. | South | 63° | 23' | 30" East | 46.00 feet; |
| 11. | South | 00° | 20' | 30" East | 66.90 feet; |
| 12. | South | 08° | 17' | 00" West | 10.18 feet; |
| 13. | South | 42° | 50' | 00" East | 118.45 feet; |
| 14. | South | 16° | 21' | 00" West | 50.04 feet; |
| 15. | South | 28° | 52' | 00" West | 54.81 feet; |
| 16. | South | 08° | 21' | 00" West | 30.15 feet; |
| 17. | South | 05° | 22' | 00" East | 18.03 feet; |
| 18. | South | 38° | 14' | 00" East | 27.80 feet; |
| 19. | South | 34° | 55' | 30" East | 30.48 feet; |
| 20. | South | 09° | 59' | 00" West | 28.07 feet; |
| 21. | South | 37° | 44' | 30" West | 56.00 feet to a point on a stone wall; |

RUNNING THENCE along said stone wall;

North 65° 33' 00" West 122.69 feet to the northerly side of North Street;

RUNNING THENCE along the northerly side of North Street, the following four (4) courses and distances:

1.  WESTERLY along a curve tot he left having a radius of 6,036.00 feet and central angle of 03° 14' 45" a distance of 341.94 feet to a point on another curve;

2.  WESTERLY on a curve tot he left having a radius of 1,536.00 feet, and central angle of 12° 21' 38" a distance of 331.36 feet to a point;

3.  North 58° 40' 30" West 394.37 feet to a point on a curve;

4.  Northerly on a curve to the right having a radius of 20.00 feet, central angle 79° 11' 30" a distance of 27.64 feet to a point;

RUNNING THENCE along the northerly side of North Street and easterly side of White Plains Avenue the following courses and distances:

| | | | | | |
|---|---|---|---|---|---|
| 1. | North | 48° | 15' | 23" West | 42.92 feet; |
| 2. | North | 56° | 23' | 58" West | 361.62 feet; |
| 3. | North | 62° | 27' | 57" West | 221.22 feet; |
| 4. | North | 37° | 11' | 32" West | 116.73 feet; |

93

5. North 13° 15' 18" West    166.38 feet;
6. North 14° 30' 11" East    39.00 feet to the southerly side of

Westchester Avenue;

THENCE along the southerly side of Westchester Avenue, the following ten (10) courses and distances:

1. South 70° 59' 10" East    228.12 feet;
2. South 82° 52' 59" East    461.04 feet;
3. South 59° 21' 03" East    104.00 feet;
4. North 19° 42' 16" East    93.52 feet;
5. North 18° 36' 53" East    27.17 feet;
6. North 81° 13' 50" East    46.28 feet;
7. North 81° 46' 27" East    237.37 feet;
8. South 86° 33' 55" East    279.74 feet;
9. South 77° 35' 18" East    355.06 feet;
10. South 80° 21' 05" East    126.92 feet to the point of

BEGINNING.

94

## SCHEDULE D

### Rules and Regulations

1.    The rights of tenants in the entrances, corridors, elevators and escalators of the Building are limited to ingress to and egress from the tenants' premises for the tenants and their employees, licensees, guests, customers and invitees, and no tenant shall use, or permit the use of, the entrances, corridors, escalators or elevators for any other purpose. No tenant shall invite to the tenant's premises, or permit the visit of, persons in such numbers or under such conditions as to interfere with the use and enjoyment of any of the plazas, entrances, corridors, escalators, elevators and other facilities of the Building by other tenants. Fire exits and stairways are for emergency use only, and they shall not be used for any other purposes by the tenants, their employees, licensees or invitees. No tenant shall encumber or obstruct, or permit the encumbrance or obstruction of any of the sidewalks, plazas, entrances, corridors, escalators, elevators, fire exits or stairways of the Building. The Landlord reserves the right to control and operate the public portions of the Building and the public facilities, as well as facilities furnished for the common use of the tenants, in such manner as it deems best for the benefit of the tenants generally. Landlord further reserves the right, at any time, to install a message/package center in an area in the Building designated by Landlord and reasonably accessible to and for the common use of tenant's, and the tenants shall comply with the procedures for the same set forth by the Landlord.

2.    The reasonable cost of repairing any damage to the public portions of the Building or the public facilities or to any facilities used in common with other tenants, caused by a tenant or the employees, licensees or invitees of the tenant, shall be paid by such tenant.

3.    The Landlord may refuse admission to the Building at any time to any person not having a pass issued by the Landlord, and may require all persons admitted to or leaving the Building outside of ordinary business hours to register. Tenant's employees, agents and visitors shall be permitted to enter and leave the building during and after ordinary business hours, subject to the reasonable requirements of Landlord. Each tenant shall be responsible for all persons for whom he requests such permission and shall be liable to the Landlord for all acts of such persons. Tenant shall obtain identification cards to be issued by Landlord for each employee and shall pay the Landlord's Building standard charge therefor. Any person whose presence in the Building at any time shall, in the judgment of the Landlord, be prejudicial to the safety, character, reputation and interests of the Building or its tenants may be denied access to the Building or may be rejected therefrom. In case of invasion, riot, public excitement or other commotion the Landlord may prevent all access to the Building during the continuance of the same, by closing the doors or otherwise, for the safety of the tenants and protection of property in the Building. The Landlord may require any person leaving the Building with any package or other object to exhibit a pass from the tenant from whose premises the

95

package or object is being removed, but the establishment and enforcement of such requirement shall not impose any responsibility on the Landlord for the protection of any tenant against the removal of property from the premises of the tenant. The Landlord shall, in no way, be liable to any tenant for damages or loss arising from the admission, exclusion or ejection of any person to or from the tenant's premises or the Building under the provisions of this rule.

4.    No tenant shall obtain or accept for use in its premises towel, barbering, boot blacking, floor polishing, lighting maintenance, cleaning or other similar services from any persons not authorized by the Landlord in writing to furnish such services, provided always that the charges for such services by persons authorized by the Landlord are comparable to the industry charge. Such services shall be furnished only at such hours, in such places within the tenant's premises and under such reasonable regulations as may be fixed by the Landlord.

5.    No awnings or other projections over or around the windows shall be installed by any tenant, and only such window blinds as are supplied or permitted by the Landlord shall be used in a tenant's premises.

6.    There shall not be used in any space, or in the public halls of the Building, either by the Tenant or by jobbers or others, in the delivery or receipt of merchandise, any hand trucks, except those equipped with rubber tires and side guards.

7.    All entrance doors in each tenant's premises shall be left locked when the tenant's premises are not in use. Entrance doors shall not be left open at any time. All windows in each tenant's premises shall be kept closed at all times and all blinds therein above the ground floor shall be lowered when and as reasonably required because of the position of the sun, during the operation of the Building air conditioning system to cool or ventilate the tenant's premises.

8.    No noise, including the playing of any musical instruments, radio or television, which, in the judgment of the Landlord, might disturb other tenants in the Building shall be made or permitted by any tenant. Nothing shall be done or permitted in any tenant's premises, and nothing shall be brought into or kept in any tenant's premises, which would impair or interfere with any of the Building services or the proper and economic heating, cleaning or other servicing of the Building or the premises, or the use or enjoyment by any other tenant of any other premises, nor shall there be installed by any tenant any ventilating, air conditioning, electrical or other equipment of any kind which, in the judgment of the Landlord, might cause any such impairment or interference. No dangerous, flammable, combustible or explosive object or material shall be brought into the Building by any tenant or with the permission of any tenant.

9.    Tenant shall not permit any cooking or food odors emanating within the Demised Premises to seep into other portions of the Building.

96

10.    No acids, vapor or other materials shall be discharged or permitted to be discharged into the waste lines, vents or flues of the Building which may damage them. the water and wash closets and other plumbing fixtures in or serving any tenant's premises shall not be used for any purpose other than the purpose for which they were designed or constructed, and no sweepings, rubbish, rags, acids or other foreign substances shall be deposited therein. All damages resulting from any misuse of the fixtures shall be borne by the tenant who, or whose servants, employees, agents, visitors or licensees, shall have caused the same.

11.    No signs, advertisement, notice or other lettering shall be exhibited, inscribed, painted or affixed by any tenant on any part of the outside or inside the premises or the Building without the prior written consent of the Landlord. In the event of the violation of the foregoing by any tenant, Landlord may remove the same without any liability, and may charge the expense incurred by such removal to the tenant or tenants violating this rule. Interior signs and lettering on doors and elevators shall be inscribed, painted, or affixed for each tenant by Landlord at the expense of such tenant, (the charge not to exceed that which a reputable outside contractor would charge), and shall be of a size, color and style reasonably acceptable to Landlord. Landlord shall have the right to prohibit any advertising by any tenant which impairs the reputation of the building or its desirability as a building for offices, and upon written notice from Landlord, Tenant shall refrain from or discontinue such advertising.

12.    No additional locks or bolts of any kind shall be placed upon any of the doors or windows in any tenant's premises and no lock on any door therein shall be changed or altered in any respect. Upon the termination of a tenant's lease, all keys of the tenant's premises and toilet rooms shall be delivered to the Landlord.

13.    No tenant shall mark, paint, drill into or in any way deface any part of the Building or the premises demised to such tenant. No boring, cutting or stringing of wires shall be permitted, except with the prior written consent of Landlord, which will not be unreasonably withheld or delayed, and as Landlord may reasonably direct. No tenant shall install any resilient tile or similar floor covering in the premises demised to such tenant except in a manner approved by Landlord.

14.    No tenant shall use or occupy, or permit any portion of the premises demised to such tenant to be used or occupied, as an office for a public stenographer or typist, or as a barber or manicure shop, or as an employment bureau. No tenant or occupant shall engage or pay any employees in the Building, except those actually working for such tenant or occupant in the Building, nor advertise for construction laborers giving an address at the Building.

15.    No premises shall be used, or permitted to be used, at any time, as a store for the sale or display of goods, wares or merchandise of any kind, or as a restaurant, shop, booth, bootblack or other stand, or for the conduct of any business or

97

occupation which predominantly involves direct patronage of the general public in the premises demised to such tenant, or for manufacturing or for other similar purposes.

16.   The requirements of tenants will be attended only upon application at the office of the Building. Employees of Landlord shall not perform any work or do anything outside of the regular duties, unless under special instructions from the office of the Landlord.

17.   Each tenant shall, at its expense, provide artificial light in the premises demised to such tenant for Landlord's agents, contractors and employees while performing janitorial or other cleaning services and making repairs or alterations in said premises.

18.   The tenant's employees shall not loiter around the hallways, stairways, elevators, front, roof or any other part of the Building used in common by the occupants thereof.

19.   No bicycle or other vehicle and no animals shall be allowed in the showrooms, offices, halls, corridors or any other parts of the Building.

20.   Tenant shall not, hire any person(s) for the purpose of cleaning the Premises other than the Building's janitorial service. Landlord shall not be responsible to Tenant for any loss of Tenant's property on or in the Premises, the Building or the Center, however occurring, or for any damage done to the property or effects of Tenant by Landlord's agents, including without limitation, Landlord's janitorial service. Janitorial services may not be furnished on nights when the Premises are occupied after 9:30 p.m. Landlord, at its expense, shall clean the exterior and interior of the Building windows.

21.   Tenant shall not, without Landlord's prior written consent, install or operate any hearing device, refrigerating or air conditioning equipment, steam or internal combustion engine, boiler, stove, machinery or mechanical devices upon the premises or carry on any mechanical or manufacturing business thereon, or use or permit to be brought into the Building flammable fluids such as gasoline, kerosene, benzene or naphtha or use any illumination other than electric lights. All equipment, fixtures, lamps and bulbs shall be compatible with, and not exceed the capacity of the Building's electric system. No explosives, firearms, radioactive or toxic or hazardous substances or materials, or other articles deemed hazardous to life, limb or property shall be brought into the Building or the Premises.

22.   Tenant shall at its expense provide artificial light for employees of Landlord while doing service or other work and making repairs or alterations in the premises.

98

23. Tenant must list all furniture and fixtures to be taken from the Building upon a form approved by Landlord. Such list shall be presented at the office of the Building for approval before acceptance by the security officer or elevator operator.

24. Tenant, its customers, invitees, licensees, agents, servants, employees and guests shall not encumber or obstruct sidewalks, entrances, passages, courts, vestibules, halls, elevators, stairways or other common areas in or about the Building.

25. Tenant shall not allow anything to be placed against or near the glass in the partitions between the premises and the halls or corridors of the Building which shall diminish the light in the halls or corridors.

26. Upon termination of this Lease, Tenant shall surrender all keys of the premises and of the Building and give to Landlord the explanation of the combination of all locks on safes or vault doors in the Premises.

27. Tenant shall provide the Building Manager with keys to all locks on any doors of the premises. The Building Manager shall be allowed admittance to the premises in the event of any emergency, fire or other casualty that may arise in other appropriate instances.

28. Unless otherwise advised by Landlord, neither Tenant nor its employees shall undertake to regulate the radiator controls of thermostats. Tenant shall report to the office of the Building whenever such thermostats or radiator controls are not working properly or satisfactorily.

29. All window treatments that are visible from the street shall be subject to Landlord's approval.

30. Tenant assumes full responsibility for protecting its space from weather, theft, robbery and pilferage, which includes keeping doors locked and other means of entry into the premises closed and secured.

31. Tenant shall not sell food of any kind or cook in the Building. Tenant may serve complimentary foods to its guests provided that it shall first comply with all Legal Requirements.

32. Water in the premises shall not be wasted by Tenant or its employees by tying or wedging back the faucets of the washbowls or otherwise.

33. All messengers shall be required to sign in and obtain a pass from either the front desk or the elevator starters. Contractors and other workmen shall use only the freight elevators for all movement within the Building.

99

34.   Landlord reserves the right at any time, to install a message/package center in an area in the Building designated by Landlord and reasonably accessible to and for the common use of the tenants, and tenants shall comply with the procedures for the same set forth by the Landlord.

100

SCHEDULE E

Cleaning Specifications

for

333 Westchester Avenue

Landlord will perform cleaning services in the Demised Premises and related areas as follows:

NIGHTLY (Five nights a week excluding holidays)

Empty and wipe clean all ash trays.

Empty and wipe clean all waste receptacles.

Wipe clean all areas within hand high reach; including but not limited to window sills, wall ledgers, chairs, desks, tables, baseboards, file cabinets, convector enclosures, pictures and all manner of office furniture.

Wipe clean all glass top desks, tables and countertops.

Sweep with treated cloths all composition tile flooring.

Carpet sweep all carpeted areas, and vacuum clean weekly.

Sweep lunchroom daily.

PUBLIC LAVATORIES (Nightly or as otherwise designated)

Wash, disinfect and dry all bowls, seats, urinals, washbasins and mirrors.

Wash and wipe dry all metal work.

Insert toilet tissue, toweling and soap in dispensers, materials to be supplied by Tenant.

101

Empty paper towel and sanitary napkin disposal receptacles and remove to designated area.

Sweep, wash and disinfect all floors, including around toilets and urinals.

Wipe clean all sills, partitions and ledges.

Wipe clean exterior of waste cans and dispensing units.

Wash both partitions monthly.

Wash tile walls monthly.

Wash and dry interior of waste cans and sanitary disposal containers weekly. Machine scrub flooring monthly.

Dust exterior of light fixtures monthly.

## FLOOR MAINTENANCE

A.  High Dusting Public Areas.

High dust all walls, ledges, pictures, anemostats, registers, grilles, etc., not reached in normal nightly cleaning quarterly.

## WINDOW CLEANING SERVICES

Clean all exterior windows, inside and out periodically during the year, as Landlord deems necessary.

## RUBBISH REMOVAL SERVICES

Remove all ordinary dry rubbish and paper only from the office premises of the Demised Premises daily, Monday through Friday, holidays excepted.

102

## SCHEDULE F

### Definitions

(a)    The term <u>mortgage</u> shall include an indenture of mortgage and deed of trust to a trustee to secure an issue of bonds, and the term <u>mortgagee</u> shall include such a trustee.

(b)    The terms <u>include</u>, <u>including</u> and <u>such as</u> shall each be construed as if followed by phrase "without being limited to".

(c)    The term <u>obligations of this lease</u>, and words of like import, shall mean the covenants to pay rent and additional rent under this lease and all of the other covenants and conditions contained in this lease. Any provision in this lease that one party or the other or both shall do or not do or shall cause or permit or not cause or permit a particular act, condition, or circumstance shall be deemed to mean that such party so covenants or both parties so covenant, as the case may be.

(d)    The term <u>Tenant's obligations hereunder</u>, and words of like import, and the term <u>Landlord's obligations hereunder</u>, and words of like import, shall mean the obligations of this lease which are to be performed or observed by Tenant, or by Landlord, as the case may be. Reference to <u>performance</u> of either party's obligations under this lease shall be construed as "performance and observance".

(e)    Reference to Tenant being or not being <u>in default hereunder</u>, or words of like import, shall mean that Tenant is in default, after any applicable notice and cure period, in the performance of one or more of Tenant's obligations hereunder, or that Tenant is not in default, after any applicable notice and cure period, in the performance of any of Tenant's obligations hereunder, or that a condition of the character described in Section 16.01 has occurred and continues or has not occurred or does not continue, as the case may be.

(f)    References to Landlord as having <u>no liability to Tenant</u> or being <u>without liability to Tenant</u>, shall mean that Tenant is not entitled to terminate this lease, or to claim actual or constructive eviction, partial or total, or to receive any abatement or diminution of rent, or to be relieved in any manner of any of its other obligations hereunder, or to be compensated for loss or injury suffered or to enforce any other kind of liability whatsoever against Landlord under or with respect to this lease or with respect to Tenant's use or occupancy of the Demised Premises.

(g)    The term <u>laws and/or requirements of public authorities</u> and words of like import shall mean laws and ordinances of any or all of the Federal, state, city, county and borough governments and rules, regulations, orders and/or directives of

103

any or all departments, subdivisions, bureaus, agencies or offices thereof, or of any other governmental, public or quasi-public authorities, having jurisdiction in the premises, and/or the direction of any public officer pursuant to law.

(h)     The term <u>requirements of insurance bodies</u> and words of like import shall mean rules, regulations, orders and other requirements of the New York Board of Fire Underwriters and/or the New York Fire Insurance Rating Organization and/or any other similar body performing the same or similar functions and having jurisdiction or cognizance of the Building and/or the Demised Premises.

(i)     The term <u>repair</u> shall be deemed to include restoration and replacement as may be necessary to achieve and/or maintain good working order and condition.

(j)     Reference to <u>termination of this lease</u> includes expiration or earlier termination of the term of this lease or cancellation of this lease pursuant to any of provisions of this lease or to law. Upon a termination of this lease, the term and estate granted by this lease shall end at noon of the date of termination as if such date were the date of expiration of the term of this lease and neither party shall have any further obligation or liability to the other after such termination (i) except as shall be expressly provided for in this lease, or (ii) except for such obligation as by its nature or under the circumstances can only be, or by the provisions of this lease, may be, performed after such termination, and, in any event, unless expressly otherwise provided in this lease, any liability for a payment which shall have accrued to or with respect to any period ending at the time of termination shall survive the termination of this lease.

(k)     The term <u>Tenant</u> shall mean Tenant herein named or any assignee or other successor in interest (immediate or remote) of Tenant herein named, while such Tenant or such assignee or other successor in interest, as the case may be, is in possession of the Demised Premises as owner of the Tenant's estate and interest granted by this lease and also, if Tenant is not an individual or a corporation, all of the persons, firms and corporations then comprising Tenant.

(l)     Words and phrases used in the singular shall be deemed to include the plural and vice versa, and nouns and pronouns used in any particular gender shall be deemed to include any other gender.

104

## FIRST AMENDMENT OF LEASE

AGREEMENT dated as of this 30th day of July , 2003, between WESTCHESTER BUILDING COMPANY, LLC, a New York limited liability company having an office at 750 Lexington Avenue, New York, New York 10022 ("Landlord") and AMERIQUEST MORTGAGE COMPANY, a Delaware corporation having an office at 1100 Town & Country Road, Suite 410, Orange, California 92868 ("Tenant").

### W I T N E S S E T H:

WHEREAS, Landlord and Tenant have heretofore entered into a lease dated February 18, 2003 (the "Lease") for the entire ground, 1st and 2nd floors (the "Existing Premises") in the North Building at 333 Westchester Avenue, White Plains, New York (the "Building Project"); and

WHEREAS, Tenant has exercised its option, pursuant to the provisions of Section 40.01 of the Lease, to lease the entire second floor (the "Additional Premises") in the East Building of the Building Project, subject to and upon the terms and conditions hereinafter provided.

NOW THEREFORE, in consideration of the premises and the mutual covenants hereinafter provided, Landlord and Tenant agree as follows:

1.     Except as otherwise herein defined, all terms contained in this Agreement shall for the purposes hereof have the same meaning ascribed to them in the Lease.

2.     Landlord hereby leases to Tenant and Tenant hereby hires from Landlord the Additional Premises, as shown crosshatched on the floor plan attached hereto as Schedule A, and consisting of 23,064 rentable square feet  (as set forth in Section 40.01) for the term commencing on the date (the "Effective Date") that the portion of the Base Building Work in the Additional Premises, as provided in Schedule B attached hereto and therein designated "To be performed prior to Commencement Date", has been substantially completed and ending on the Expiration Date of the Lease, unless sooner terminated as provided in the Lease.  Landlord's Base Building Work shall be performed subject to and in compliance with the applicable provisions of Section 2.01 and Schedule B.  Such Additional Premises is hereby added to and made part of the Demised Premises and wherever the words "Demised Premises" are referred to in the Lease they shall be deemed to mean the Existing Premises in the North Building and the Additional Premises in the East Building; and wherever the words "North Building" are referred to in the Lease they shall mean the North Building and the East Building, as may be applicable.

3.     (a)     Tenant has examined and agrees to accept the Additional

Premises on the Effective Date in its present "as is" condition, except for Landlord's Base Building Work as set forth in Schedule "B" and Landlord's then applicable representations, warranties and covenants set forth in the Lease.

    (b)   If, prior to the Effective Date, Tenant shall enter the Additional Premises to make any installations, Landlord shall have no liability or obligation for the care or preservation of Tenant's property, except for the negligence of Landlord, its agents, servants and employees.

    4.   Commencing from and after the Effective Date, with respect only to the Additional Premises, the amount of the minimum rent payable in Section 3.01(a) shall be at the rate of $530,472.00 per annum (or $44,206.00 per month) provided if the Effective Date is other than the first day of the month, then the minimum rent for such month shall be prorated based on the number of days in such calendar month. Notwithstanding the foregoing and provided Tenant is not then in default under any of the provisions of the Lease or its part to be performed, Tenant shall be entitled to an abatement of the minimum rent only for the Additional Premises in the amount of $44,206.00 for each of the 1st, 2nd, 3rd, 4th, 5th, 6th, 7th, 8th, 17th and 18th month of the term following the Effective Date. However, Tenant shall pay to Landlord the amount of $44,206.00 upon the execution of this Amendment which shall be applied to payment of the minimum rent for the 9th month of the term succeeding the Effective Date.

    5.   Except for Landlord's Base Building Work, Tenant agrees to perform the initial work and installations required to make the Additional Premises suitable for the conduct of Tenant's business, subject to and in compliance with the provisions of Article 39. Tenant, at its expense, agrees to deliver to Landlord, for Landlord's approval, the plans and specifications for Tenant's initial work within thirty (30) days from the date of this Amendment, and upon failure to do so, the Effective Date shall be accelerated one (1) day for each day thereafter until the date such plans and specifications have been delivered to Landlord. Such approval process shall be as provided in Article 39. The amount of Landlord's Initial Contribution toward reimbursement of the cost of such work shall be up to the sum of $634,260.00 of which soft costs shall not exceed $57,660.00. Such Landlord's Initial Contribution shall be subject to and payable in the manner as provided in Section 39.01. After Tenant has actually paid thirteen (13) installments of minimum rent for such Additional Premises, the amount of Landlord's Additional Contribution under Section 39.02 shall be up to the sum of $57,660.00, subject to and payable in the manner as provided in Section 39.02.

    6.   In Section 22.01(a), commencing from and after the Effective Date, with respect to all of the Demised Premises (inclusive of the Additional Premises), in subdivision (i), the term "Tax Base Factor" shall mean as therein provided; and in subdivision (v), the term "the Percentage" shall mean 25.857%.

    7.   In Section 22.02(a), commencing from and after the Effective Date, with respect to all of the Demised Premises (inclusive of the Additional Premises), in subdivision

(i), the term "Expense Base Factor" shall mean as therein provided; and in subdivision (iii), the term "the Percentage" shall mean 25.857%.

8.  Subject to the provisions of Article 45 of the Lease, Tenant at its own expense, may install a separate Dish in connection with its use of the Additional Premises, at a location designated by Landlord.  Subject to Landlord's reasonable prior approval of the plans therefor, Tenant at its expense may install cabling and similar lines within any existing conduit lines for utilities between the North Building and East Building as long as the same does not interfere with any such utility lines of Landlord.

9.  Landlord and Tenant represent and warrant that they had no dealings or negotiations with any brokers or agents, other than Colliers ABR, Inc., Cushman & Wakefield of Connecticut, Inc. and Cohen Brothers Realty Corporation, in connection with this Agreement.  Landlord will pay said brokers a commission pursuant to separate agreements.  Landlord and Tenant agree to indemnify and hold harmless the other from and against any cost, expense or liability for any compensation, commissions or charges arising out of a breach by it of the representations contained in this paragraph.

10.  Except as modified by this Agreement, the Lease and all the terms, covenants and condition thereof (except those which by their terms are no longer applicable) shall remain in full force and effect and are hereby in all respects ratified and confirmed.

IN WITNESS WHEREOF, Landlord and Tenant have executed this Amendment on the day and year first written above.

WESTCHESTER BUILDING COMPANY, LLC

By:    West Building Corp.
       its managing member

By:    _____
       Charles Steven Cohen, President

AMERIQUEST MORTGAGE COMPANY

By:    _____
       Name: Abe Darwish
       Title: ~~Director~~ of Real Estate & Facilities
              VP

H:\collazo\myfiles\Westchester\amendments\AMERIQUEST 1st AMENDMENT.7.07.03 .wpd

3

SCHEDULE A

FLOOR PLAN



SCHEDULE B

Work

Lease

Between

Westchester Building Company, LLC,

As Landlord

and

AMERIQUEST MORTGAGE COMPANY,

As Tenant

Relating to the entire second floor in East Building
333 Westchester Avenue, White Plains, New York

1.    Landlord, at Landlord's expense, and without deduction from Landlord's Aggregate Contribution,  except as otherwise specified in this Schedule B and the Lease, will perform and install the following base building work and installations (Base Building Work"), all of which work shall be performed in compliance with all laws (to the extent applicable) and shall be of material, manufacture, design, capacity, finish and color of the building standard adopted by Landlord for the Building, except as otherwise set forth in said plans and specifications:

## Base Building Documentation

Tenant acknowledges that all drawings have been sent to Tenant's architect.

To be performed prior to Commencement Date:

Masonry

1.    Close up shaft areas between Tenant space and shaft.

2.    Repair damage caused by asbestos removal (if necessary).

5

3.   All concrete block shafts walls shall go to deck above.

## Common Areas Columns, Perimeter Conditions and Building Core.

1.   All existing mechanical and existing electrical closets to be cleaned and painted in building standard manner.

2.   Furnish and install convector covers where necessary.

3.   The inside face perimeter walls , sills, soffits, shall be framed, dry-walled, insulated, spackled, finished, taped and sanded from slab to finished ceiling and ready for paint.

   "Level 4" finish to be completed by Tenant's contractor.

4.   Elevator and core walls shall be framed, drywalled, spackled, finished, taped and sanded from the slab to the underside of the ceiling slab and ready for paint.

   "Level 4" finish to be completed by Tenant's contractor.

## Toilet Rooms

1.   Renovate in building standard colors, (to be the same colors as in the Existing Premises in the North Building) materials, finishes and design, restrooms, including new fixtures, new toilet partitions, new countertops and new tiles. Please note that it shall not be necessary for this item to be completed in order for the Effective Date to commence. However, the Landlord shall be required to complete this item before Tenant takes occupancy of the Additional Premises.

2.   If an ADA bathroom(s) is(are) required by City or State Code, Landlord shall provide one (1)  unisex ADA compliant bathroom with finishes in accordance with the ADA bathroom located the in the second floor of the North Building.  Please note that it shall not be necessary for this item to be completed in order for the Effective Date to commence. However, the Landlord shall be required to complete this item before Tenant takes occupancy of the Additional Premises.

## HVAC Systems

1.   Main supply trunks and return trunks are currently existing.  All distribution shall be by Tenant, at its expense, including but not limited to, branches, thermostats, controls and similar devices and equipment.

2.   All existing induction unit water control valves to be refurbished and provided in good working condition.